**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JONICE SAPP,

                    Plaintiff,

     v.

PJ CHEESE, INC.,

             Defendant.

Case No. 1:26-cv-22395-KMM

**PETITIONER'S RESPONSE TO DEFENDANT'S**
**MOTION TO VACATE, MODIFY, OR CORRECT ARBITRATION AWARD**

**TABLE OF CONTENTS**

Page:

I.      INTRODUCTION………………………………………………….    1

II.     STATEMENT OF FACTS………………………………………….    1

III.    ARGUMENT……………………………………………………….    1

        A.      Applicable Legal Standard………………………………….    1

        B.      PJ Cheese's Argument That Judge Barzee Flores
                Failed To Even Arguably Consider The Arbitration
                Agreement Ignores The Evidence……………………………...    2

        C.      Judge Barzee Flores Acted Within Her Authority
                Under The Arbitration Agreement…………………………….    5

        D.      Judge Barzee Flores Did Not Impose Her Own
                Policy Choice By Awarding Reimbursements………………...    9

        E.      The Court Should Deny PJ Cheese's Demand
                For Reasoned Analysis Of The Body Of Law
                Regarding Tax Refund Claims…………………………………    10

        F.      Respondent's Complaints About Mass Arbitration
                Are Irrelevant…………………………………………………….    13

                1.      Procedural Rulings Are Not Reviewable………………    13

                2.      The Final Award Before The Court Did Not
                        Include The Process Arbitrator's Decisions
                        Attacked By PJ Cheese……………………………...    14

                3.      There Was A Clear Contractual Basis For
                        Mass Arbitration……………………………………….    14

        G.      The Arbitration Agreement Does Not Bar The AAA's
                Mass Arbitration Process…………………………………………    16

IV.     CONCLUSION………………………………………………………...    19

i

## TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s):**

*Abrahamyan v. Citibank N.A.*,
  2025 U.S. Dist. LEXIS 90158 (C.D. Cal. May 9, 2025)……………………   14, 18

*Arriaga v. Fla. Pac. Farms, L.L.C.*,
  305 F.3d 1228 (11th Cir. 2002)……………………………………………   3, 4, 6, 9, 10

*Benoit v. PJ Louisiana, Inc.*,
  AAA Case No. 01-21-0004-8139 (Duval Dec. 13, 2022)…………………...   8

*Brown v. Steak N Shake, Inc.*,
  2023 U.S. Dist. LEXIS 248826 (N.D. Ga. May 17, 2023)………………….   18

*Bruno's, Inc. v. UFCW Local Union 1657*,
  858 F.2d 1529 (11th Cir. 1988)……………………………………………   9

*Calle v. Pizza Palace Cafe LLC*,
  2022 U.S. Dis. LEXIS 1708 (E.D.N.Y. Jan. 4, 2022)……………………….   7

*Carolus v. Coinbase Global, Inc.*,
  2025 U.S. Dist. LEXIS 214948 (N.D. Cal. Oct. 7, 2025)…………………...   18-19

*Cattau v. Nat'l. Ins. Servs.*,
  865 N.W.2d 215 (Wis. App. Apr. 29, 2015)………………………………...   11-12

*Childers v. N.Y. & Presbyterian Hosp.*,
  36 F. Supp. 3d 292 (S.D.N.Y.  2014)……………………………………….   11, 12

*Davidson v. Henkel Corp.*,
  2015 U.S. Dist. LEXIS 722 (E.D. Mich. Jan. 6, 2015)……………………   11, 12

*Davidson v. Henkel Corp.*,
  2013 U.S. Dist. LEXIS 103185 (E.D. Mich. July 24, 2013)……………….   11-12

*Davis v. Prudential Sec., Inc.*,
  59 F.3d 1186 (11th Cir. 1995)………………………………………………   8

*Diamond Resorts U.S. Collection Dev., LLC v. Johnson*,
  2018 U.S. Dist. LEXIS 178135 (M.D. Fla. Oct. 17, 2018)………………...   1

*Dunn v. PJ Cheese, Inc.*,
  AAA Case No. 01-25-0002-2854 (Feldman June 11, 2026)………………...   8

*EEOC v. Cnty. of Erie,*
 751 F.2d 79 (2d Cir. 1984)…………………………………………..  13

*Epic Sys. Corp. v. Lewis*,
 584 U.S. 497 (2018)……………………………………………………  18

*Fata v. Piza Hut of Am., Inc.*,
 2016 U.S. Dist. LEXIS 153545 (M.D. Fla. Aug. 6, 2016)…………………  4, 7, 9

*First Preservation Capital v. Smuth, Barney et al.*,
 939 F Supp. 1559 (S.D. Fla. 1996)………………………………………….  13

*Freeman v. Citibank, N.A.,*
 2015 U.S. Dist. LEXIS 197610 (N.D. Ga. Jan. 20, 2015)…………………...  1

*Gherardi v. Citigroup Global Mkts., Inc.*,
 975 F.3d at 1238 (11th Cir. 2020)……………………………………………  6, 10, 15, 16,
 18

*Hidroelectrica Santa Rita S.A. v. Corporacion AIC, SA,*
 119 F.4th 920 (11th Cir. 2024)………………………………………………….  2, 15, 16

*Interstate Brands Corp. v. Local 441 Retail, Wholesale., Etc. Union*,
 39 F.3d 1159 (11th Cir. 1994)……………………………………………...  8

*John Wiley & Sons, Inc. v. Livingston,*
 376 U.S. 543 (1964)……………………………………………………………  13

*Kyocera Corp. v. Prudential-Bache T Servs.*,
 341 F.3d 987 (9th Cir. 2003)…………………………………………………  14

*Lin v. New Fresca Tortillas, Inc.,*
 2019 U.S. Dist. LEXIS 74505 (E.D.N.Y. May 1, 2019),
 report and recommendation adopted at 2019 U.S. Dist.
 LEXIS  95197 (E.D.N.Y. May 28, 2019)…………………………………….  7-8

*Llorca v. Sheriff, Collier Cnty.*,
 893 F.3d 1319 (11th Cir. 2018)………………………………………………….  13

*Lynn's Food Stores, Inc. v U.S. Dep't of Labor*,
 679 F. 2d 1350 (11th Cir. 1982)………………………………………………  4-5

*MacClelland v. Cellco P'ship.*,
 609 F. Supp. 3d 1024 (N.D. Cal. 2022)………………………………………  15

*Marine v. Viejo Quisqueya Rest. Corp.,*
 2022 U.S. Dist. LEXIS 162555 (E.D.N.Y. Sept. 8, 2022)……………………  7

*McMahan v. Whaleco, Inc.*,
  2026 U.S. Dist. LEXIS 48100 (E.D.N.Y. Mar. 9, 2026)……………….…..   14

*Mikulski v. Centerior Energy Corp.*,
  501 F.3d 555 (6th Cir. 2007) (*en banc*)………………………………..   11

*Mosley v. Wells Fargo & Co.*,
  2024 U.S. App. LEXIS 5510 (9th Cir. Mar. 7, 2024)……………………   14

*Nalco Co. LLC v. Bonday*,
  142 F.4th 1336 (11th Cir. 2025)……………………………………….…..   8

*O'Dell v. PJ Cheese, Inc.*,
  AAA Case No. 01-24-0005-9915 (Green Feb. 18, 2026)…………………   8

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564 (2013)…………………………………………………………   2, 10, 15

*Perez v. Global Airport Sec. Servs.*,
  253 F.3d 1280 (11th Cir. 2021)…………………………………………   9

*Perez v. W. Side Pizza, LLC*,
  2024 U.S. Dist. LEXIS 62588 (S.D.N.Y. Apr. 4, 2024)………………..   7

*Rahman v. Red Chili Indian Café, Inc.*,
  2024 U.S. Dist. LEXIS 214360 (S.D.N.Y. Nov. 22, 2024)………………..   7

*Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*,
  160 F.4th 1110 (11th Cir. 2025)………………………………………   2

*Reyes v. Coppola's Tuscan Grill, LLC*,
  2023 U.S. Dist. LEXIS 103745 (S.D.N.Y. June 13, 2023),
  adopted at 2023 U.S. Dist. LEXIS 113332 (S.D.N.Y.
  June 30, 2023)………………………………………………………..   7

*Sarwi v. PJ Cheese, Inc.*,
  AAA Case No. 01-22-0002-1162 (Green Mar. 6, 2023)………………   6

*S. Commun's. Servs. v. Thomas*,
  720 F.3d 1352 (11th Cir. 2013)…………………………………………   2, 15, 16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*,
  559 U.S. 662 (2010)………………………………………………………   6, 9, 15, 16, 18

*Ullom v. Bill Perry & Assocs.*,
  2021 U.S. LEXIS 99610 (M.D. Fla. May 26, 2021)…………………………   6, 7, 9, 10

*United Paperworkers Int'l. Union v. Misco, Inc.*,
    484 U.S. 29 (1987)…………………………………………………...    13

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)…………………………………………………    18

*Wagman-Geller v. Wells Fargo Bank, N.A.*,
    2026 U.S. Dist. LEXIS 70385 (S.D. Cal. Mar. 30, 2026)……………………    14

*Wallenberg v. PJ Utah, LLC,*
    AAA Case No. 01-21-0004-6899 (Williams Oct. 20, 2020)…………………    8

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)…………………………………………………    17

## Constitutional Provisions / Statutes:

15 U.S.C. § 1514A…………………………………………………..    3

26 U.S.C. § 7422……………………………………………………….    5, 10-12

29 U.S.C. § 201……………………………………………………    3

29 U.S.C. § 216……………………………………………………    18

29 U.S.C. § 1002…………………………………………………..    11

Fla. Const. Art. X § 24………………………………………………….    3-5, 13

Fla. Stat. § 448.110…………………………………………………...    3, 4

## Regulations:

29 C.F.R. § 531.35……………………………………………………    7

## I.      INTRODUCTION

Although Respondent PJ Cheese, Inc. ("PJ Cheese") acknowledges the applicable legal standard, specifically that the Court must confirm the final arbitration award if the arbitrator "even arguably" considered the parties' agreement, PJ Cheese devotes most of its Motion to strenuously re-arguing the merits of the underlying arbitration. Hence, PJ Cheese has failed in its recognized "very high" burden to avoid confirmation. *Diamond Resorts U.S. Collection Dev., LLC v. Johnson*, 2018 U.S. Dist. LEXIS 178135, at *5 (M.D. Fla. Oct. 17, 2018) ("very high" burden); *Freeman v. Citibank, N.A.,* 2015 U.S. Dist. LEXIS 197610, at *29 (N.D. Ga. Jan. 20, 2015). The evidence detailed below, and in Claimant Jonice Sapp's previously-filed Motion to Confirm Arbitration Award (ECF 12) and exhibits thereto, show that the arbitrator, at the very minimum, considered the parties' agreement. This should end the Court's inquiry.

Nonetheless, Ms. Sapp further shows that Judge Mary Barzee Flores (Ret.), as arbitrator, ruled on an issue that the parties agreed to arbitrate and that her rulings were consistent with the parties' agreement and applicable law. Judge Barzee Flores did not merely dispense her own brand of justice.[1]

## II.      STATEMENT OF FACTS

To avoid duplicative briefing, Petitioner incorporates by reference the Factual Background section of her previously-filed Motion to Confirm Arbitration Award and Memorandum in Support Thereof. ECF 12 at 2-6.

## III.      ARGUMENT

### A.      Applicable Legal Standard

Again, to avoid duplication, Petitioner incorporates the legal standards set forth in in detail

---

[1] Exhibits 1-36 were filed with Petitioner's Combined Motion to Confirm Arbitration Award and Memorandum in Support Thereof filed May 29, 20206. ECF 12.

1

in her Motion to Confirm Arbitration Award. *Id.* at 6-10.

**B.      PJ Cheese's Argument That Judge Barzee Flores Failed To Even Arguably Consider The Arbitration Agreement Ignores The Evidence**

The evidence belies PJ Cheese's argument that Judge Barzee Flores failed to even arguably consider the parties' arbitration agreement, which incorporates a "Dispute Resolution Plan" or "Dispute Resolution Program" ("DRP"). As Ms. Sapp previously showed, the sole question for the Court is whether Judge Barzee Flores even arguably based her decision on the parties' agreement. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); *Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110, 1120 (11th Cir. 2025).

The Eleventh Circuit recognizes that showing that an arbitrator "even arguably interpreted" the parties' agreement can entail as little as pointing to the arbitrator referencing terms of that agreement. *See, e.g., Hidroelectrica Santa Rita S.A. v. Corporacion AIC, SA*, 119 F.4th 920, 926 (11th Cir. 2024) ("The Tribunal's explanations evidence that it engaged with the contract's language, thereby sticking to '[its] delegated task of interpreting a contract' and acting within the bounds of its authority.") (citing *Oxford Health Plans,* 569 U.S. at 572); *S. Commun's. Servs. v. Thomas,* 720 F.3d 1352, 1359-60 (11th Cir. 2013) (finding that the arbitrator arguably interpreted the parties' contract because the arbitrator "recounting the text of the contract's arbitration clause" adopting AAA rules, which ended the inquiry).

At minimum, Ms. Sapp shows that Judge Barzee Flores referenced and considered relevant terms of the parties' agreement. The face of the Final Award, and the Orders incorporated therein, clearly show that Judge Barzee Flores considered and interpreted the parties' agreement.

To start with, in the October 19, 2025 Order Denying PJ Cheese's, Inc.'s Motion for Summary Judgment on Statutory Claim For Reimbursement, Judge Barzee Flores expressly rejected PJ Cheese's argument about "non-arbitrability of the disputed payment." Ex. 2 at 6. That

2

argument by PJ Cheese was based on its argument that "the arbitrator lacks the authority to make a tax adjudication" under the DRP's provisions defining the scope of arbitrable claims. *E.g.,* Ex. 12 at 1, 15 & 20.

The DRP defines "legal claims" subject to arbitration to broadly include claims under any "non-criminal federal, state or other governmental law, statute, regulation or ordinance." Ex. 4 at 6. Clearly, that broad definition includes Ms. Sapp's claims asserted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Florida Constitution, Fla. Const. Art. X § 24, and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110. *Id.*; Ex. 9. The DRP next provides that "[t]he only claims or disputes not subject to arbitration are as follows:

- any claim by an employee for benefits under a plan or program which provides its own binding arbitration procedure
- any statutory workers' compensation claim
- unemployment insurance claims
- any lawful claim(s) brought under the Dodd Frank Act's whistleblower protection, pursuant to 15 U.S.C. Section 1514A, *et. seq.*, is exempted from this DRP plan.

Ex. 4 at 7. In rejecting PJ Cheese's argument, Judge Barzee Flores, at the very minimum, arguably held that Ms. Sapp's FLSA, Florida Constitution, and FMWA are arbitrable under those DRP provisions defining the scope of arbitrable claims. *Id.*; Ex. 4 at 6.

The DRP provides that "[i]f you win, the arbitrator can award you anything you might seek through a court of law." Ex. 4 at 6 ¶ 5. Thus, Judge Barzee Flores considered the types of remedies that the Eleventh Circuit has recognized in similar FLSA and Florida minimum wage claims based unreimbursed job costs. Ex. 2 at 2-6. She concluded that, in *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002), the Eleventh Circuit recognized the remedy of reimbursements in such claims. Ex. 2 at 3. Further, based on her analysis of the language of Fla. Const. Art. X § 24 and Fla. Stat. § 448.110, Judge Barzee Flores further recognized that the Florida

3

Constitution and FMWA both provide courts the ability to award reimbursements to restore minimum wage. Ex. 2 at 2-6.[2] For those reasons, among others, Judge Barzee Flores concluded that she may award reimbursements to Ms. Sapp. This shows that, at the very least, Judge Barzee Flores arguably considered the DRP's language providing that she may award remedies coextensive with the remedies courts may award.

On February 17, 2026, Judge Barzee Flores issued her Order Granting Summary Judgment on Actual and Liquidated Damages. Ex. 3. Therein, she again, at minimum, arguably applied the DRP's provision stating that she may award the same remedies as courts. Ex. 4 at 6.  Judge Barzee Flores reviewed the language of Fla. Stat. § 448.110 and interpretive federal court case law to find that employees may recover liquidated damages equal to the entire amount of actual damages requested in a Florida pre-suit notice when employers pay only part of that amount. Ex. 3 at 2-5.

As another example showing that Judge Barzee Flores, at minimum, arguably considered the DRP, PJ Cheese argued that Claimant's fee recovery was limited to $350.00 per hour for only one attorney. Ex. 18 at 5-6 & 10. To support that argument, PJ Cheese quoted at length the DRP's purported restrictions on fee rates and attorney participation. *Id.* Judge Barzee Flores issued her Final Award on March 25, 2025. Ex. 1. Referencing PJ Cheese's attempt to enforce those purported limits, Judge Barzee Flores rejected such limits as invalid and unenforceable. *Id.* at 7. She explained:

> Sapp counters that at least seven arbitrators have found the purported rate and representation caps unenforceable on the authority of the Eleventh Circuit case of *Lynn's Food Stores, Inc. v U.S. Dep't of Labor*, 679 F. 2d 1350, 1352 (11th Cir.

---

[2] PJ Cheese argues that "the Arbitrator did not purport to apply any applicable law" in deciding that Ms. Sapp may recover reimbursements. ECF 13 at 5. That contention is belied by Judge Barzee Flores' express examination of the language of Fla. Const. Art. X § 24 and Fla. Stat. § 448.110, her express application of the controlling Eleventh Circuit's decision in *Arriaga*, her express recognition of *Fata v. Piza Hut of Am., Inc.*, 2016 U.S. Dist. LEXIS 153545, at *20 (M.D. Fla. Aug. 6, 2016) and her survey of decisions by other courts and arbitrators. Ex. 2 at 2-6.

4

1982) ("FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate"). It is not clear why PJ Cheese's counsel did not cite this caselaw or even attempt to distinguish it. I too find the purported rate and representation caps unenforceable.

*Id.* at 7.

Thus, at the very minimum, Judge Barzee Flores again arguably interpreted the DRP. That is sufficient for confirmation.

**C.      Judge Barzee Flores Acted Within Her Authority Under The Arbitration Agreement**

PJ Cheese argues that Judge Barzee Flores exceeded her authority by deciding a tax refund, which PJ Cheese argues is a claim the parties did not agree to arbitrate. That argument suffers from at least two glaring flaws: (1) from the beginning, Claimant expressly sought "reimbursement" of job expenses, and (2) the DRP provides that arbitrators may award any remedy that a court may award, and the remedy of reimbursements in minimum wage claims based on under-reimbursed job expenses is well-recognized, including controlling Eleventh Circuit authority.

As stated above, the DRP broadly defines "legal claims" subject to arbitration as any claims for violation of any "non-criminal federal, state or other governmental law, statute, regulation or ordinance." Ex. 4 at 6. That broad definition clearly includes Ms. Sapp's FLSA, Florida Constitution Art. X § 24, and FMWA claims. *Id.*; Ex. 9. Again, none of the types of claims listed in the DRP's short list of excluded claims apply here. Ex. 4 at 7.

As further explained below, courts recognize that tax issues preemption under 26 U.S.C. § 7422 depends on the original nature of the claim. From the beginning, Claimant expressly sought "reimbursements" of job expenses to restore her minimum wages, not recovery of tax deductions. *See, e.g.,* Amended Fla. Pre-Suit Notice dated Aug. 22, 2024 (Ex. 5) at 2 ("…please pay $3,456.26 *as reimbursements for vehicle costs* within 15 days of receipt of this letter if you seek to avoid a

Florida minimum wage claim."); Statement of Claim ("SOC") (Ex. 9) ¶ 40 (quoting *Sarwi v. PJ Cheese, Inc.*, AAA Case No. 01-22-0002-1162 (Green Mar. 6, 2023) (Ex. 19) at 3-4 & n.2 (holding that "[a]s a matter of law, employees' minimum wages are restored through *awards of reimbursements* in minimum wage claim disputes based upon unreimbursed job costs." (emphasis added)) (citing *Arriaga*, 305 F.3d 1228; *Ullom v. Bill Perry & Assocs.*, 2021 U.S. LEXIS 99610, at *11-12 (M.D. Fla. May 26, 2021) (awarding the plaintiff "mileage owed to remedy kickback from overtime")); Ex. 13 at 3 (arguing that "[a]ll relevant authority shows that the recovery is reimbursements, not taxes, as Your Honor previously held." (caps removed)); *id.* at 3-8 (detailed arguments that recovery sought is reimbursements, not taxes).

Consistent with Mr. Sapp's original claim, Judge Barzee Flores awarded Ms. Sapp "$1,066.45 "*as additional reimbursements*" as a remedy in her successful FLSA and Florida claims. Ex. 1 at 8. She never ordered PJ Cheese to refund taxes it previously deducted. *Id.*; *see also, e.g.,* Ex. 2 at 7 (holding that Ms. Sapp's damages are "*reimbursements*"). Even if Judge Barzee Flores's conclusion was legally incorrect (it was not), binding Supreme Court and Eleventh Circuit required confirmation of her Final Award. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 671-72 (2010)); *Gherardi v. Citigroup Global Mkts., Inc.*, 975 F.3d at 1238 (11th Cir. 2020).

The DRP expressly granted Judge Barzee Flores the power to award reimbursements, which she did. Again, it broadly provides that "[i]f you win, the arbitrator can award you anything you might seek through a court of law." Ex. 4 at 6 ¶ 5. The remedy of reimbursements in minimum wage claims based on under-reimbursed job costs is well-recognized. In fact, in *Arriaga*, the Eleventh Circuit held that "[i]f an expense is determined to be primarily for the benefit of the employer, *the employer **must reimburse** the employee during the workweek in which the expense*

6

*arose."*) 305 F.3d at 1237 (emphasis added, citing 29 C.F.R. § 531.35); *see also*, *id.* ("***Workers must be reimbursed*** during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage.") (emphasis added); *id.* ("the Growers *must reimburse* the Farmworkers up to the point that their wages satisfy the FLSA minimum wage") (emphasis added).

District courts in the Eleventh Circuit likewise recognize that reimbursements are awarded to remedy minimum wage violations resulting from under-reimbursed job costs. *See, e.g., Ullom*, 2021 U.S. LEXIS 99610, at *11-12 (awarding the plaintiff "mileage owed to remedy kickback from overtime"); *Fata*, 2016 U.S. Dist. LEXIS 153545, at *20 (approving settlement agreement of FLSA and FMWA claims by pizza drivers that contained an express provision that recovery of "'reimbursement' for job expenses will be non-taxable.").

*Accord, Rahman v. Red Chili Indian Café, Inc.*, 2024 U.S. Dist. LEXIS 214360, at *27-28 & *35-36 (S.D.N.Y. Nov. 22, 2024) (awarding $1,130.00 for "'tools-of-the-trade' damages" to delivery worker for bicycle purchase and repair separately, in addition to awarding him "$17,354.25 in unpaid minimum and overtime wages" in other claims); *Perez v. W. Side Pizza, LLC*, 2024 U.S. Dist. LEXIS 62588, at *17-18 (S.D.N.Y. Apr. 4, 2024) (awarding two plaintiffs a total of $1,560.00 for "tools of the trade damages" for purchase of bicycles, a helmet, chain, lock, and bicycle repairs separately, in addition to awarding them $98,838.25 total "wage damages" in other claims); *Reyes v. Coppola's Tuscan Grill, LLC*, 2023 U.S. Dist. LEXIS 103745, at *32-33 (S.D.N.Y. June 13, 2023), adopted at 2023 U.S. Dist. LEXIS 113332 (S.D.N.Y. June 30, 2023); *Marine v. Viejo Quisqueya Rest. Corp.,* 2022 U.S. Dist. LEXIS 162555, at *22 & *30 (E.D.N.Y. Sept. 8, 2022); *Calle v. Pizza Palace Cafe LLC,* 2022 U.S. Dis. LEXIS 1708, at *29-30 (E.D.N.Y. Jan. 4, 2022); *Lin v. New Fresca Tortillas, Inc.,* 2019 U.S. Dist. LEXIS 74505, at *11-12 (E.D.N.Y.

May 1, 2019) (awarding plaintiff $15,999.82 "as reimbursement of motorcycle costs."), report and recommendation adopted at 2019 U.S. Dist. LEXIS 95197 (E.D.N.Y. May 28, 2019); *Wallenberg v. PJ Utah, LLC,* AAA Case No. 01-21-0004-6899 (Williams Oct. 20, 2020) (Ex. 25) at 5; *Benoit v. PJ Louisiana, Inc.,* AAA Case No. 01-21-0004-8139 (Duval Dec. 13, 2022) (Ex. 26) at 8; *Dunn v. PJ Cheese, Inc.*, AAA Case No. 01-25-0002-2857 (Feldman June 11, 2026) (Ex. 40) at 7; *Bonin v. PJ Cheese, Inc.*, AAA Case No. 01-24-0005-9923 (Cesarano Mar. 13, 2026) (Ex. 24) at 7; *O'Dell v. PJ Cheese, Inc.)*, AAA Case No. 01-24-0005-9915 (Green Feb. 18, 2026) (Ex. 23) at 2.

The Court should reject PJ Cheese's attempt to recharacterize Ms. Sapp's FLSA, Florida Constitution and FMWA claims for reimbursements as a tax dispute. From her pre-suit notice of claim to the present, Ms. Sapp has always sought to recover "reimbursements" under the FLSA and Florida law.

PJ Cheese's cases vacating arbitration awards based on claims *not submitted to arbitration and/or claims not raised by claimants in arbitration* are inapposite. As shown above, Ms. Sapp expressly sought "reimbursements" for her job expenses *ab initio*; PJ Cheese opposed that request; Judge Barzee Flores considered the issues and then found for Claimant. Exs. 2 & 3. In marked contrast, PJ Cheese's cases concern arbitrators deciding claims never asserted by claimants and/or awarding remedies never sought by claimants. *See, e.g., Nalco Co. LLC v. Bonday*, 142 F.4th 1336, 1340 (11th Cir. 2025) (vacating arbitration award because arbitrator granted relief on ERISA claim that the claimant never asserted); *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1195 (11th Cir. 1995) (vacating arbitration award of fees because claimant did not seek fees in arbitration; but confirming rest of award); *Interstate Brands Corp. v. Local 441 Retail, Wholesale., Etc. Union*, 39 F.3d 1159, 1162 (11th Cir. 1994) (arbitrator based his award on violating DOT regulations when the union alleged breach of contract).

PJ Cheese seeks to rely on other cases in which courts reached the unremarkable finding that the arbitrator's action fell outside the scope of the arbitration agreement. Those decisions are fact-specific based on the arbitration agreement language and the claims asserted, and thus inapplicable here. For example, in *Bruno's, Inc. v. UFCW Local Union 1657,* 858 F.2d 1529, 1531 (11th Cir. 1988), the court vacated an arbitration award because the arbitration agreement only gave the arbitrator power to decide grievances, but the arbitrator purported to establish new work rules. *Id.* at 1531. Judge Barzee Flores did no such thing. The DRP expressly affords her the power to grant the same remedies as courts (Ex. 4 at 6 ¶ 5), as she did by awarding reimbursements.

**D.     Judge Barzee Flores Did Not Impose Her Own Policy Choice By Awarding Reimbursements**

In a similar argument, PJ Cheese contends that Judge Barzee Flores exceeded her powers because "instead of identifying and applying a rule of decision derived from the FAA or [applicable] law, the arbitration panel impose[s] its own policy choice and thus exceed[s] its powers." ECF 22 at 8 & 14 (edits by Respondent) (citing *Stolt-Nielsen*, 559 U.S. at 676-77). Here, the applicable rule of decision derived from the FAA is obviously that "private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen*, 559 U.S. at 682.[3] Judge Barzee Flores awarded "reimbursements," a remedy she was expressly empowered to award under the DRP. Ex. 4 at 6 ¶ 5 ("If you win, the arbitrator can award you anything you might seek through a court of law."). Moreover, the applicable rule of law is that reimbursements are a proper remedy recognized by the Eleventh Circuit and other courts. *See, e.g., Arriaga*, 305 F.3d at 1237; *Ullom*, 2021 U.S. LEXIS 99610, at *11-12; *Fata*, 2016 U.S. Dist. LEXIS 153545, at *20. Thus, Judge Barzee Flores followed both the applicable rule of decision rooted in the FAA and applicable law.

---

[3] But of course, unlawful provisions within arbitration agreements are not enforced. *See, e.g., Perez v. Glob Airport Sec. Servs.*, 253 F.3d 1280, 1286 (11th Cir. 2001).

That is far different from imposing her own choice of policy.

**E.     The Court Should Deny PJ Cheese's Demand For Reasoned Analysis Of The Body Of Law Regarding Tax Refund Claims**

PJ Cheese devotes a large part of its Motion to Vacate to an improper attempt to persuade the Court to take a "deep dive" into the contours of tax claim preemption under 26 U.S.C. § 7422(a). In doing so, PJ Cheese seeks to convince the Court that Judge Barzee Flores incorrectly decided the legal issue of whether Ms. Sapp's recovery was reimbursement or tax deductions. ECF 26 at 10-17. Controlling Eleventh Circuit law holds that such analysis of the merits (basically a district court's *de novo* review of the law) falls well outside the proper district court scope of review. *Oxford Health Plans*, 569 U.S. at 569; *Gherardi*, 975 F.3d at 1238-39. Again, courts must confirm a final arbitration award if the arbitrator "even arguably" interprets the agreement. *Id.*

Even if PJ Cheese's attempt to argue § 7422 preemption could be considered at this stage (it cannot), PJ Cheese's arguments are meritless and its cases are inapposite. Those cases all concern obvious, and often express, efforts to obtain tax refunds. Alternatively stated, none of PJ Cheese's cases concern minimum wage violations resulting from unreimbursed job costs, where reimbursements (not tax withholdings) are recognized as the proper remedy. *Arriaga, Ullom, etc.* As an even broader distinction, none of PJ Cheese's cases began as a claim based on a legal theories *other than improper withholding*, where increased tax liability is merely a consequence of the defendant's action. If the merits of Judge Barzee Flores's decision were actually at issue on motions to confirm or vacate, that difference may form the critical distinction. However, examination of whether the arbitrator correctly decided that legal issue falls well outside the narrow scope of review. *Oxford Health Plans*, 569 U.S. at 569; *Gherardi*, 975 F.3d at 1238-39.

If PJ Cheese's legal arguments were actually at issue, PJ Cheese fails to consider the applicable cases that *began with claims other than efforts to recover tax withholdings*. Courts

recognize that 26 U.S.C. § 7422 does not preempt claims that begin with challenging an action *other than tax collection or withholding* that has the impact of increasing tax liability. A prime example is *Davidson v. Henkel Corp.*, 2015 U.S. Dist. LEXIS 722 (E.D. Mich. Jan. 6, 2015). The plaintiffs sued under ERISA, 29 U.S.C. § 1002 *et seq.*, alleging that the plan administrator *breached an employee benefit plan's terms* by failing to withhold taxes on the plan participants' funds while those funds were under the plan administrator's control. *Id.* at *2021. The plaintiffs further alleged that the administrator's failure to comply with the plan terms caused them to pay additional taxes. *Id.* at *22. The defendants argued that the plaintiffs' claims were preempted by 26 U.S.C. § 7422 because the plaintiffs sought a "tax refund in disguise." *Id.* at *7. The *Davidson* court held that IRC § 7422 did not preempt the claim. The court explained that "[t]his case is not about how Defendants resolved the FICA issue *after* it arose, but instead about how the FICA issue came about in the first place. Intrinsically, this case is not about taxes, but is instead about Defendants' administration of the Plan." *Id.* at *8. *Davidson* further emphasized that "[t]he mere fact that the plaintiffs' damages are calculated in terms of [] taxes does not necessitate the conclusion that the plaintiffs claim[s] must actually be … for a federal income tax return." *Id.* at *11 (citing *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 304 (S.D.N.Y. 2014) (edits in *Childers*) (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (*en banc*)); *see also Davidson v. Henkel Corp.*, 2013 U.S. Dist. LEXIS 103185, at *14 (E.D. Mich. July 24, 2013) (rejecting defendants' argument that § 7422 bars the claim because "Plaintiff is not challenging Defendants' withholding of FICA taxes, rather he is challenging their failure to follow the special timing rule [required by the plan's terms] resulting in a reduction of his benefits.").

As another example, in *Cattau v. Nat'l. Ins. Servs.,* 865 N.W.2d 215 (Wis. App. Apr. 29, 2015), retirees alleged that the defendants failed to administer a retirement plan in accordance with

11

their duties, representations, and contracts, causing the retirees suffered damages. *Id.* ¶ 10. The defendants argued that the retirees were attempting to "circumvent" the law to obtain tax advantages. *Id.* The court held that the defendants "miss the fundamental aspect of the amended complaint—the Retirees have not brought a suit or a proceeding 'for the recovery of any internal revenue tax.'" *Id.* The court further explained that "[i]f they had, we would agree that § 7422 would apply." *Id.* The court then distinguished a claim to enforce the benefit plan terms from a claim for a tax refund. *Id.* Like *Davidson*, the *Cattau* court further explained that "[t]he mere fact that the plaintiffs' damages are calculated in terms of overpaid income taxes does not necessitate the conclusion that the plaintiffs' claim must actually be one for a federal income tax refund.'" *Id.* (quoting *Mikulski*, 501 F.3d at 565).

In *Childers*, medical students and residents sought to recover FICA taxes withheld by hospitals affiliated with their medical schools as a result of the defendants' breach of settlement agreement terms. 36 F. Supp. 3d at 303. The court held that "§ 7422 does not apply to Plaintiffs' claims because these are not suits for a tax refund." *Id.* The court further explained that "Plaintiffs are not suing the hospital for its actions as a tax collector, but for completely separate actions and omissions [breach of settlement agreement], which they allege resulted in negative tax consequences." *Id.* at 304 (citing *Davidson*, 2013 U.S. Dist. LEXIS 103185, at *14).

From the beginning (Ms. Sapp's pre-suit notice), she asserted claims expressly seeking "reimbursements" for job expenses, not for a tax refund. The tax issue only arose because PJ Cheese failed to fully pay Ms. Sapp those reimbursements in response to her Florida pre-suit notice, then PJ Cheese claimed a "tax issue." If PJ Cheese's method of creating preemption over FLSA and Florida claims by paying part of the recovery to tax agencies were actually permitted, a new defense ("new barrier") to enforcing FLSA and Florida rights would be created that would

12

deny Ms. Sapp the "make whole" relief to which she is entitled under those laws, and likewise impair claimants' ability to fully recover under many other laws enacted for the protection of individuals and society. *See, e.g., Llorca v. Sheriff, Collier Cnty.*, 893 F.3d 1319, 1328 (11th Cir. 2018); Fla. Const. Art. X § 24(f)); *see also, e.g., EEOC v. Cnty. of Erie*, 751 F.2d 79, 82 (2d Cir. 1984) (the "goal" of an FLSA suit "is to make whole the victims of the unlawful underpayment of wages").

## F.      Respondent's Complaints About Mass Arbitration Are Irrelevant

Prior to Judge Barzee Flores arbitrating Ms. Sapp's *individual claim,* her claim was part of a mass arbitration under the AAA Mass Arbitration Supplementary Rules. That mass arbitration is irrelevant at this stage for three main reasons: (1) it is axiomatic that procedural rulings in arbitration are not subject to any judicial review; (2) Judge Barzee Flores did not incorporate the process arbitrators' decisions in the Final Award now before the Court; and (3) even if review of a procedural ruling not incorporated into the Final Award were proper, the process arbitrators did nothing wrong. At minimum, the process arbitrators arguably considered the arbitration agreement in deciding that the AAA's mass arbitration rules applied.

### 1.      Procedural Rulings Are Not Reviewable

Procedural decisions by arbitrators are beyond a court's review. *See, e.g., United Paperworkers Int'l. Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987) ("when the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator"); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) (same); *First Preservation Capital v. Smuth, Barney et al.*, 939 F Supp. 1559, 1565 (S.D. Fla. 1996) (same). More specific to the instant matter, "[t]he appointment of a Process Arbitrator constitutes a procedural decision within the discretion of the arbitration provider, and

13

courts do not have jurisdiction to review such procedural decisions." *Wagman-Geller v. Wells Fargo Bank, N.A.*, 2026 U.S. Dist. LEXIS 70385, at \*20-21 (S.D. Cal. Mar. 30, 2026) (following *Kyocera Corp. v. Prudential-Bache T Servs.*, 341 F.3d 987, 1000 (9th Cir. 2003) (procedural decisions in arbitration are not subject to judicial review)); *see also Mosley v. Wells Fargo & Co.*, 2024 U.S. App. LEXIS 5510, at \*2-3 (9th Cir. Mar. 7, 2024) (district court did not err in finding that process arbitrator's award was both interlocutory and not subject to judicial review for reasons including "[i]t is well-settled that questions of procedure relating to arbitration are outside of the purview of the federal courts."); *McMahan v. Whaleco, Inc.*, 2026 U.S. Dist. LEXIS 48100, at \*44 n.17 (E.D.N.Y. Mar. 9, 2026) ("…the parties are bound by the Process Arbitrator's determination, and the Court will not second-guess the Process Arbitrator's application of AAA rules).

**2. The Final Award Before The Court Did Not Include The Process Arbitrator's Decisions Attacked By PJ Cheese**

PJ Cheese attacks decisions by Process Arbitrator William "Bill" Lemons and Judge Carol Heckman (Ret.) finding that the AAA's Mass Arbitration Supplementary Rules applied. Those Process Arbitrators' decisions are correct. However, Judge Barzee Flores did not incorporate those decisions into her Final Award now before this Court and those decisions had no bearing on the Final Award at issue. Accordingly, there is no basis to second guess those interim orders.

**3. There Was A Clear Contractual Basis For Mass Arbitration**

In this case, PJ Cheese required Ms. Sapp to sign an arbitration agreement requiring arbitration before the AAA. The AAA then determined that the Mass Arbitration Supplementary Rules apply and appointed two process arbitrators – William Lemons, then Judge Carol Heckman (Ret.). Both decided that the Mass Arbitration Supplementary Rules applied.  As courts repeatedly hold, this determination and appointment is well within the AAA's authority. *See, e.g., Abrahamyan v. Citibank N.A.*, 2025 U.S. Dist. LEXIS 90158, at \*14-15 (C.D. Cal. May 9, 2025)

14

(citing *MacClelland v. Cellco P'ship.*, 609 F. Supp. 3d 1024, 1044 (N.D. Cal. 2022)). Nonetheless, PJ Cheese refused to comply with rulings by those process arbitrators. PJ Cheese now improperly argues that consecutive decisions by Arbitrator Lemons, the AAA itself, and Judge Heckman that the mass arbitration rules apply were all incorrect *and* should be overturned because none of them "even arguably construed" the DRP.

Again, PJ Cheese demands the Court re-decide the merits of an issue decided in the underlying arbitration, which clearly exceeds the Eleventh Circuit's narrow scope of review. *Oxford Health Plans*, 569 U.S. at 569; *Gherardi*, 975 F.3d at 1238-39. Applying the actual standard, the evidence shows that the arbitrators, at minimum, arguably considered the parties' agreement in deciding that the AAA's mass arbitration rules apply. *Hidroelectrica Santa Rita, SA*, 119 F.4th at 926; *S. Commun's. Servs.*, 720 F.3d at 1359-60.

As earlier shown, in the November 22, 2024 Order holding that the AAA mass arbitration rules apply, Arbitrator Lemons quoted the pertinent agreement term:

> The agency will administer any arbitration under the AAA's "Employment Arbitration Rules and Mediation Procedures" and in conformity with this Dispute Resolution Program. ... The rules in effect on the date a demand is made shall control.

Ex. 37 at 1. Next, Arbitrator Lemons reasoned that the AAA mass arbitration rules were "placed in play" by the parties' agreement to arbitrate pursuant to the AAA Employment Arbitration Rules. *Id.* at 1-2.[4] That conclusion is consistent with AAA Mass Arbitration Supplementary Rule MA-1(a) that provides that "[t]hese Supplementary Rules supplement any other AAA-ICDR Rules

---

[4] PJ Cheese admits that Arbitrator Lemons interpreted the parties' agreement as PJ Cheese informs the Court that "Lemons reasoned that the Mass Arbitration Supplementary Rules were automatically 'placed in play' by the AAA Employment Arbitration Rules incorporated into the parties' agreement." ECF 36 at 4. However, PJ Cheese proceeds to criticize Arbitrator Lemons' reasoning, which falls outside of the scope of permissible review at this stage. *Stolt-Nielsen*, 559 U.S. at 671-72; *Gherardi*, 975 F.3d at 1238.

applicable to the disputes." *Id.* Arbitrator Lemons also explained that the arbitration agreement must be modified to avoid the mass arbitration rules. *Id.* at 2 n.2.

Arbitrator Lemons further recognized that the parties' arbitration agreement provided him, as an arbitrator, the exclusive authority to interpret the arbitration agreement and that agreement expressly prohibited any court from such interpretations. *Id.* n.1 (referencing Ex. 4 at 9 ("Unless this provision would result in the Program being held unenforceable under prevailing law, the arbitrators, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of the agreement to arbitrate including, but not limited to, any claim that all or any part of the agreement to arbitrate is void and voidable.")). Thus, at the very minimum, Arbitrator Lemons arguably interpreted the parties' arbitration agreement. *Hidroelectrica Santa Rita*, 119 F.4th at 926; *S. Commun's. Servs.,* 720 F.3d at 1359-60.

Judge Heckman built on Arbitrator Lemons' November 22, 2024 ruling that the AAA mass arbitration rules apply pursuant to the DRP. In the June 20, 2025 Order, she held that those rules provide that "the process arbitrator shall have the authority to determine ... [d]isputes regarding payment of administrative fees, arbitrator compensation and expenses." Ex. 38 at 9. PJ Cheese demand for critical review of the merits of the arbitrators' decisions should be rejected as well beyond the Eleventh Circuit's scope of allowed review. *Stolt-Nielsen,* 559 U.S. at 671-72; *Gherardi*,  975 F.3d at 1238.

Thus, the evidence shows that the process arbitrators, at minimum, arguably considered the parties' agreement.

**G.      The Arbitration Agreement Does Not Bar The AAA's Mass Arbitration Process**

Even if correctness of arbitrators' decisions regarding the AAA mass arbitration rules were at issue, the DRP prohibits class and collective action claims, not the AAA's mass arbitration

process. Specifically, the DRP provides that "there shall be no class or collective action arising from any employee's claim(s) and each employee may only maintain a claim under this plan on an individual basis and may not participate in a class or collective action." Ex. 4 at 7.

PJ Cheese ignores the fundamental differences between "class and collective actions" prohibited by the DRP, on the one hand, and AAA's mass arbitration process, on the other hand. The purpose of the AAA's mass arbitration process is to provide parties "an efficient and economical path toward the resolution of multiple *individual disputes*," not to combine claims for one final decision on the ultimate merits. AAA Mass Arbitration Supplementary Rules at 1 ("Introduction"). Those mass arbitration rules repeatedly emphasize that each employee's claim remains an "*individual case*" or "*individual dispute*." *Id.* at 1 ("Each case will still be heard and decided individually by the arbitrator."); 7, (Rule MA-6(i) ("Unless the parties otherwise agree, the Process Arbitrator's service will conclude as to an *individual case* upon the appointment of a Merits Arbitrator to that case, the closure of the *individual case*, or …" (emphasis added)); 8 Rule MA-7(c) ("…if the number of individual cases exceeds the number of qualified arbitrators in the locale … the AAA-ICDR may assign multiple cases to a single Merits Arbitrator, *who will decide each case on its own merits*." (emphasis added)).

In sharp contrast to AAA's mass arbitration process, which provides for individual determination of each employee's claim based on its own facts and merit, a class action (prohibited by the DRP) must entail determination of a common contention by each class member "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 338 (2011). Moreover, unlike the AAA's mass arbitration process, "class judgment binds absentees with respect to their individual claims for

17

relief." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 654-55 (2022).

Also, in sharp contrast to AAA's mass arbitration process, that provides for "individual" determination of each employee's claim, a collective action (also prohibited by the DRP) entails an action by one or more employees against an employer on behalf of others "similarly situated" and all such employees who opt-in are "bound" by the court's decision. 29 U.S.C. § 216(b); *Brown v. Steak N Shake, Inc.*, 2023 U.S. Dist. LEXIS 248826, at *9-10 (N.D. Ga. May 17, 2023).

PJ Cheese simply ignores case law analyzing the AAA's mass arbitration rules, which hold that arbitrators have authority to apply the AAA's mass arbitration rules. *See, e.g.*, *Abrahamyan*, 2025 U.S. Dist. LEXIS 90158, at *15. Instead, PJ seeks to rely on cases such as *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018). Its reliance on *Epic Sys.* is totally misplaced as that decision merely holds that class action waivers are valid. Ms. Sapp never sought a class action, a collective action, or any other decision on the merits impacting other employees. She only agreed to coordination of numerous *individual claims* through AAA mass arbitration process. Each claim is, or will be, decided on an individual basis, as Ms. Sapp experienced. Exs. 1-3.

Respondent argues that the AAA's mass arbitration process "fundamentally 'changes the nature of arbitration.'" ECF 22 at 19. Whether that broad characterization is true or not (it is not), such consideration falls well outside of the sole question for the Court: did the arbitrator even arguably consider the parties' agreement? *Stolt-Nielsen S.A.,* 559 U.S. at 671-72; *Gherardi*, 975 F.3d at 1238.

In *Carolus v. Coinbase Global, Inc.*, 2025 U.S. Dist. LEXIS 214948 (N.D. Cal. Oct. 7, 2025), the parties agreed that the arbitration agreement incorporated the AAA Mass Arbitration Supplementary Rules, but the plaintiff, like PJ Cheese here, argued that those rules require him to participate in class action procedures, cause unfair delays, and violate due process rights. *Id.* at

*27-32. The court rejected those arguments. *Id. Carolus* recognized that the AAA's mass arbitration rules provide that parties may challenge AAA's batching procedure before a separate arbitrator. *Id.* Further, *Carolus* explained that the AAA's mass arbitration process "*expedites* resolution by grouping similar claims," as opposed to causing delays, while "allowing an administrative arbitrator to establish procedures to help resolve disputes promptly, and it preserves individuality by requiring each claim to be filed and considered separately." *Id.* at *28-29 (emphasis added). *Carolus* further explained that, unlike a class action, the process arbitrator's decisions cannot bind future claimants or absent parties. *Id.* at *29-32. In sum, *Carolus* recently rejected the same arguments against AAA's mass arbitration process that PJ Cheese asserts here.

Moreover, some of the statements used to support PJ Cheese's "fundamental change" argument are demonstrably false. For example, PJ Cheese argues that the parties do not participate in selecting process arbitrators. ECF 26 at 24. The attached AAA correspondence shows otherwise. Ex. 39. As another example, PJ Cheese states that "the Mass Arbitration Supplementary Rules require the parties to 'initiate a global mediation of the Mass Arbitration[.]'" ECF 26 at 25 (citing Rule MA-9). PJ Cheese ignores that the same Rule MA-9 states that "[a]ny party may unilaterally opt out of mediation upon written notification to the AAA-ICDR and the other parties to the arbitration." *Id.*

## IV.   CONCLUSION

For all reasons stated, the Court should deny Defendant's Motion to Vacate, Modify or Correct Arbitration Award, confirm the Final Award including the October 19, 2025 and February 17, 2026 Orders incorporated therein, enter judgment for Ms. Sapp, hold that PJ Cheese must pay Ms. Sapp $1,066.45 for reimbursements, pay her $1,443.84 for liquidated damages, pay her counsel $39,647.50 for fees and $2,021.75 for costs, and schedule fee and cost briefing.

Respectfully submitted this 16th day of July, 2026.

ARCADIER, BIGGIE, AND WOOD, PLLC.
*/s/ Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the original of the foregoing was filed with the Clerk of Court by using the CM/ECF system on this 16th day of July, 2026.

ARCADIER, BIGGIE, AND WOOD, PLLC.

*/s/ Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire
Florida Bar No.: 0093839
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Primary Email: office@ABWlegal.com
Secondary Email: wood@ABWlegal.com
Phone: (321) 953-5998
Fax: (321) 953-6075

*Counsel for Petitioner Jonice Sapp*

20