**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JONICE SAPP,

                    Plaintiff,

      v.

PJ CHEESE, INC.,

                    Defendant.

Case No. 1:26-cv-22395-KMM

**PLAINTIFF'S REPLY IN SUPPORT OF HER**
**MOTION TO CONFIRM ARBITRATION AWARD**

### I.      INTRODUCTION

Most of the arguments set forth in PJ Cheese's Response in Opposition to Sapp's Motion To Confirm Arbitration Award (ECF 14) were previously addressed in Plaintiff's Motion to Confirm Arbitration Award (ECF 12) and Plaintiff's Response to Defendant's Motion to Vacate, Modify, or Correct Arbitration Award (ECF 15). To avoid duplicative briefing, Plaintiff incorporates those prior filings. The following focuses on response to Defendant's few new or different arguments presented in its Opposition to Sapp's Motion to Confirm Arbitration Award (ECF 14). However, Plaintiff highlights the fact that Defendant continues to ignore the actual standard, specifically whether the arbitrator "even arguably interpreted the parties contract," in favor of its continued efforts to argue that the arbitrator incorrectly decided the merits and Respondent continues to attack procedural decisions by arbitrators that are not subject to judicial review.

### II.      REPLY ARGUMENTS

**A.      Defendant Attempts To Create The Fiction That Plaintiff Sought A Tax Refund**

In its response to the Motion to Confirm, Defendant "doubles down" on its prior attempts to create the fiction that Plaintiff sought a refund of taxes in her arbitration. In reality, Plaintiff merely

1

sought reimbursement of her job expenses, a well-recognized remedy under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Florida Constitution, Fla. Const. Art. X § 24, and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110. That is the same remedy she sought in her Florida pre-suit notice, but Defendant failed to fully pay her reimbursements.

After Plaintiff highlighted in earlier filing the clear fact that her claim began with an express pre-suit demand for "reimbursements," Defendant now modifies its argument by contenting that Plaintiff *switched* from (a) seeking reimbursements in her Florida pre-suit notice to (b) seeking a refund of tax withholdings in her arbitration. *See, e.g.,* ECF 14 at 14-15. But, the evidence shows no such switch. Her AAA Employment Arbitration Rules Demand for Arbitration ("DFA") form, filed to initiate her AAA arbitration, describes the nature of her claim as:

> Minimum wage deficits resulting from under-reimbursed vehicle costs in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., Fla. Const. Art. X, § 24, and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110.

Ex. 8. As shown previously, the recognized remedy for such violations is reimbursements. The DFA form says nothing about seeking a tax refund. *Id.* Moreover, throughout her Statement of Claim ("SOC") filed with the AAA, Ms. Sapp repeatedly alleged that Defendant under-reimbursed her vehicle costs. Ex. 9 ¶¶ 1, 2, 13-16, 19-23, 27-28, 39, 49, 66. Ms. Sapp also alleged in her SOC that Defendant's actions were willful based on its long history of under-reimbursing delivery drivers for vehicle costs, resulting in a series of arbitration awards against Defendant. *Id.* ¶¶ 30-34. Consistent with her Florida pre-suit notice and initial AAA filings, Ms. Sapp continued to argued in her formal briefing to Judge Mary Barzee Flores (Ret.), arbitrator, that Defendant owes her vehicle cost reimbursements. *See, e.g.,* Ex. 13 at 3-7 (arguing that "all relevant authority shows that the recovery is reimbursements, not taxes, as Judge Green previously held") (caps removed). Thus, the evidence shows that, contrary to Defendant's self-serving mischaracterization, Ms. Sapp

consistently pursued reimbursements through her entire arbitration.

**B.      Defendant Attempts To Rely On Outdated Decisions**

Defendant re-argues the merits of Judge Barzee Flores' decision, but this time it demands the Court apply outdated decisions using a prior standard of review. Again, all such arguments regarding the merits / appropriate remedy fall well outside the actual scope of review: whether "the arbitrator (even arguably) interpreted the parties' contract." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

In *Oxford Health Plans*, the Supreme Court announced the current standard for judicial review of arbitration awards:  "[i]f we determine that the arbitrator (even arguably) interpreted the parties' contract, we must end our inquiry and deny a motion for vacatur." *Id.*, 569 U.S at 569 (internal quotation marks omitted) (alternations adopted). Defendant attempts to rely on pre-*Oxford Health Plans* decisions by the Eleventh Circuit to seek vacatur, including *Warrior & Gulf Nav. Co. v. United Steelworkers of Am.*, *AFL-CIO*, 996 F.2d 279 (11th Cir. 1993). ECF 6-7. But, since *Oxford Health Plans*, the Eleventh Circuit has explained that the *Warrior & Gulf* standard no longer applies. *Warrior Met Coal Mining, LLC v. UMW*, 28 F.4th 1073, 1081 (11th Cir. 2022); *Wiregrass Metal Trades Council v. Shaw Env't. & Infrastruture, Inc.*, 837 F.3d 1083, 1087-88 (11th Cir. 2016). The Eleventh Circuit further explained that, since *Oxford Health Plans*, "when reviewing arbitration awards, we allow arbitrators to 'make errors, even … 'serious error[s].'" *Warrior Met Coal* Mining, 28 F.4th at 1081 (citing *Gherardi v. Citigroup Glob. Mkts.,* 975 F.3d 1232, 1237 (11th Cir. 2020) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 671 (2010)).

More specifically, Defendant argue that, in in *Warrior & Gulf*, the Eleventh Circuit "affirm[ed an] order vacating [an] arbitration award where the 'arbitrator's remedy contradicted the express language of the [a]greement." ECF 14 at 7. In *Warrior Met Coal Mining*, the Eleventh Circuit

3

refused to do that, explaining that, since *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 671 (2010), "when reviewing arbitration awards, we allow arbitrators to 'make errors, even … 'serious error[s].'" *Id.* at 1081 (citing *Gherardi v. Citigroup Glob. Mkts.,* 975 F.3d 1232, 1237 (11th Cir. 2020) (quoting *Stolt-Nielsen*, 559 U.S. at 671)).

Moreover, unlike the pre-*Oxford Health Plans* decision in *Warrior & Gulf*, Judge Barzee Flores' decision is fully consistent with the parties' arbitration agreement. That agreement specifically provides that "[i]f you win, the arbitrator can award you anything you might seek through a court of law." Ex. 4 at 6 ¶ 5. As Judge Barzee Flores held, reimbursements for job expenses are remedies available under the FLSA, Fla. Const. Art. X § 24 and FMWA and the remedy of reimbursements is well-recognized by the Eleventh Circuit, district courts, and arbitrators alike. *See, e.g.,* Ex. 2 at 2-6 (examining language of Fla. Const. Art. X § 24 and the FMWA, Fla. Stat. § 448.110; following *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002) (""If an expense is determined to be primarily for the benefit of the employer, *the employer **must reimburse** the employee* during the workweek in which the expense arose.") (emphasis added in *Sapp* (Ex. 2) at 3; *Fata v. Pizza Hut of Am., Inc.,* 2016 U.S. Dist. LEXIS 153545, at \*20 (M.D. Fla. Aug. 5, 2016) (approving settlement agreement in the same claims by pizza drivers alleging minimum wage violations resulting from under-reimbursed vehicle costs which contained an express provision that recovery of "reimbursement" for job expenses); *Marine v. Viejo Quisqueya Rest. Corp.,* 2022 U.S. Dist. LEXIS 162555, at \* 22 (E .D.N.Y. Sept. 8, 2022) (ordering that "plaintiff be awarded $700 in damages for the cost of purchasing and maintaining his bicycle"); *id.at* \*30 (awarding "$700 in tools of the trade reimbursement"); *Calle v. Pizza Palace Cafe LLC,* 2022 U.S. Dis. LEXIS 1708, at \* 29-30 (E.D.N.Y. Jan. 4, 2022) ("plaintiff should be awarded $308 as reimbursement for his 'tool of the trade' expenses against defendants");

*Lin v. New Fresco Tortillas, Inc.,* 2019 U.S. Dist. LEXIS 74505, at * 11-12 (E.D.N.Y. May 1, 2019) (awarding plaintiff $15,999.82 "as reimbursement of motorcycle costs."), report and recommendation adopted at 2019 U.S. Dist. LEXIS 95197 (E .D.N.Y. May 28, 2019); *Wallenberg v. PJ Utah, LLC,* AAA Case No. 01-21-0004-6899 (Williams Oct. 20, 2020) at 5 (awarding pizza delivery driver "unreimbursed actual vehicle costs."); *Benoit v. PJ Louisiana, Inc.,* AAA Case No. 01-21-0004-8139 (Duval Dec. 13, 2022), at 8 (awarding damages for "unreimbursed vehicle costs" and "unreimbursed return drives"); *Sarwi v. PJ Cheese, Inc.*, AAA Case No. 01-22-000201162 (Green Mar. 6, 2022) (holding that damages for under-reimbursed vehicle costs causing minimum wage violations are reimbursements for job expenses, not wages).

Second, contrary to Defendant's argument, the DRP does not limit arbitrators to legal remedies, as opposed to equitable remedies. That is clear from the DRP's language. Although the DRP uses the term "legal claims," the surrounding context indicates that the DRP does not use that term "legal claims" to distinguish between claims at law and claims at equity. For example, the DRP's provision titled "Claims Subject to Arbitration," defines "legal claims" to "include[] claims related to any Company employee benefit programs or its fiduciaries or administrators (in their personal or official capacity." Such "legal claims" obviously include claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), which are entirely equitable in nature, and courts are limited by ERISA's text itself to granting only equitable relief in ERISA claims. *See, e.g., Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, at 1287 n. 2 (11th Cir. 1998) ("Relief under ERISA is limited to equitable remedies.").

Third, if the DRP did limit the scope of remedies available in a court (as Defendant now contend), that limitation, and possibly the entire arbitration agreement, would be unenforceable under controlling Eleventh Circuit law and the "effective vindication doctrine," which prohibits

parties from limiting remedies otherwise available in court through an arbitration agreement. *See, e.g.*, *Williams v. Shapiro*, 161 F.4th 1313, 1320 (11th Cir. 2025) (finding arbitration agreement's prohibition on forms of relief authorized by statute was null and void as it violates the "effective vindication doctrine"); *Davis v. Oasis Legal Fin. Op. Co., LLC*, 936 F.3d 1174, 1181-82 (11th Cir. 2019) (same). All federal appellate decisions are in accord. *Parrott v. Int'l. Bancshares Corp.*, 167 F.4th 728, 738-40 (5th Cir. 2026); *Platt v. Sodexo, S.A.*, 2025 U.S. App. LEXIS 19535, at *20-21 (9th Cir. Aug. 4, 2025); *Fleming v. Kellog Co.*, 2024 U.S. App. LEXIS 26709, at *7-10 (6th Cir. Oct. 21, 2024); *Cedeno v. Sasson*, 100 F.4th 386, 404 (2d Cir. 2024); *Henry v. Wilmington Trust, N.A.*, 72 F.4th 499, 507-08 (3d Cir. 2023); *Harrison v. Envision Mgmt. Hldg., Inc.*, 59 F.4th 1090, 1109 (10th Cir. 2023); *Smith v. Bd. of Dirs. of Triad Mfg.*, 13 F.4th 613, 621-23 (7th Cir. 2021).

**B.**     **Defendant Fails In Its Attempts To Distinguish Cases Holding That Claims Seeking Relief Other Than Tax Refunds *Ab Initio* Are Not Preempted Under 26 U.S.C. § 7422**

Recognizing that applicable decisions hold that claims that began by seeking remedies other than tax refunds are not preempted under 26 U.S.C. § 7422(a), Defendant attempts to distinguish those on-point cases by arguing that they should be subject to overly-narrow construction so that their precedential value is confined to only claims entailing the same basic facts and legal theories.[1] Those key cases, such as *Davidson v. Henkel Corp. ("Davidson II")*, 2015 U.S. Dist. LEXIS 722 (E.D. Mich. Jan. 6, 2015); *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 304 (S.D.N.Y. 2014); *Davidson v. Henkel Corp. ("Davidson I")*, 2013 U.S. Dist. LEXIS 103185, at *14 (E.D. Mich. July 24, 2013); and *Cattau v. Nat'l. Ins. Servs.,* 865 N.W.2d 215 (Wis. App. Apr. 29, 2015), are not reasonably susceptible to such narrow construction. Rather, those cases articulate the broader principle of law that claims seeking remedies other than tax refunds *ab initio* are not

---

[1] Of course, these arguments by Defendant improperly attack the merits of the arbitration decision.

preempted by § 7422(a), even if the measure of damages is the amount of taxes paid as a result of the defendant's conduct. As previously shown, Ms. Sapp's claim began as an express pre-suit demand for "reimbursements" under the Florida Constitution and the FMWA. Ex. 5 at 2. When Defendant failed to fully pay Ms. Sapp those reimbursements, she pursued claims under the FLSA, Fla. Const. Art. X § 24 and Fla. Stat. § 448.110 seeking the rest of the reimbursements due. Ex. 9. Thus, the principle recognized in *Davidson, Childers* and *Cattau* applies here.

*Davidson II* recognized that the key issue is the nature of the original claim / how the tax issue arose. 2015 U.S. Dist. LEXIS 722, at *8-11. Although Mr. Davidson's claim arose as an ERISA claim alleging that the defendant breached an ERISA plan's terms, contrary to Defendant's argument the *Davidson II* court did not limit the result to only claims that begin by alleging violation of ERISA plan terms. Rather, the *Davidson II* court recognized that, more broadly, the key issue is "how the FICA [tax] issue came about in the first place." *Id.* at *8-9 ("This case is not about how Defendants resolved the FICA issue *after* it arose, but instead about how the FICA issue came about in the first place. Intrinsically, this case is not about taxes, but is instead about Defendants' administration of the Plan."). Because Mr. Davidson challenged the defendant's compliance with the ERISA plan terms, as opposed to seeking a tax refund, there was no § 7422(a) tax preemption, even if damages were measured by the amount of extra taxes Mr. Davidson paid due to the defendant's actions. However, *Davidson II* clearly indicates that the same result applies when a claimant alleges any cognizable statutory or common law action, other than merely seeking a tax refund. In fact, nothing in *Davidson I* or *II* indicates that the result is limited to ERISA claims for plan language violations, or even ERISA claims in general.

In *Childers*, medical students and residents sought to recover FICA taxes withheld by hospitals affiliated with their medical schools as a result of the defendants' breach of a settlement agreement.

36 F. Supp. 3d at 303. The court held that "§ 7422 does not apply to Plaintiffs' claims because these are not suits for a tax refund. A corollary is that these actions do not arise out of the Hospital's collection of taxes, and therefore do not implicate the rationale for excusing the employer as tax collector from liability for tax refunds." *Id.* Like *Davidson*, the *Childers* court refused to find tax preemption based on the nature of the plaintiff's original claim: "Plaintiffs are not suing the Hospital for its actions as a tax collector, but for completely separate actions and omissions, which they allege resulted in negative tax consequences." *Id.* at 304; *see also id.* (further explaining that "Plaintiffs are not suing the hospital for its actions as a tax collector, but for completely separate actions and omissions [breach of settlement agreement], which they allege resulted in negative tax consequences." (citing *Davidson*, 2013 U.S. Dist. LEXIS 103185, at *14)). Although *Childers* arose out of a claim for breach of a settlement agreement, its holding, and the rule of decision it announced (claims originally seeking remedies other than a tax refund are not preempted under § 7422(a)) obviously applies whenever the original claim is based on a claim other than challenging tax collection or withholding. Like *Davidson*, nothing *Childers* indicates that the applicable legal standard, or result, are confined to challenging compliance with a settlement agreement. In fact, *Childers* broadly recognized that "[b]ringing state law claims simply to recover taxes paid may constitute an improper end-run around § 7422, but that is not what is happening here." *Id.* at 303.

The plaintiffs in *Cattau* alleged that the administrator of a school district's retirement plan "failed to administer the retirement plan in accordance with their applicable duties, representations, and contracts" under a variety of state common-law theories including breach of fiduciary duty, breach of contract, misrepresentation, negligence, and unjust enrichment, plus a violation of a federal civil rights statute, 42 U.S.C. § 1983. 865 N.W.2d 215, at ¶ 5. But, those plaintiffs did allege that such conduct caused them extra tax liability. *Id.* at ¶ 10. Unlike *Davidson, Cattau* did

not consider ERISA, likely because the plan at issue was a "governmental plan" exempt from ERISA. 29 U.S.C. §§ 1002(32) & 1003(b)(1). Although the claims were different, the *Cattau* court likewise recognized that the same rule of decision as *Davidson* and *Childers* still applies: did the plaintiff originally assert a claim based on acts other than recovery of taxes. 865 N.W.2d 215, at ¶ 10. *Cattau* found no preemption because the original claim challenged the plan administrator's compliance with its legal duties and representations, but did not originally seek a tax refund. *Id.* Like *Davidson* and *Childers*, the *Cattau* court did not limit its holding in any way to assertion of the same common law or § 1983 claims as the *Cattau* plaintiffs brought. The Court should easily reject Defendant's attempt to impose such a narrow restriction on the rule of decision set forth in *Davidson*, *Childers* and *Cattau.*

Notably, Defendant's attempt to limit *Davidson*, *Childers* and *Cattau* to instances where plaintiffs assert the same underlying claims as those plaintiffs is undermined by the fact that each of those three cases entailed a different legal theory, although the legal theories advanced by the *Davidson* and *Cattau* plaintiffs may be somewhat similar. *Compare Davidson* (alleging violation of ERISA based on violation of ERISA retirement plan terms) *with Childers* (alleging violation of a settlement agreement) *with Cattau* (alleging that administrator of a non-ERISA retirement plan failed to comply with its "applicable duties, representations, and contracts" under various state common law theories and a federal civil rights statute). The dissimilarity of these three underlying claims shows that the applicable rule of decision, specifically that courts consider the nature of the original claim, is not limited to any particular type of legal claim or theory.

**C.      Judge Heckman's June 20, 2026 Order Did Not Merely Depend On Her Finding That The Restriction On the Arbitration Pool Was "Not Workable"**

Defendant argues that Judge Carol E. Heckman (Ret.), as process arbitrator struck the DRP's restriction of the arbitrator pool to only 7 Alabama-licensed attorneys because that restriction was

"not workable." ECF 14 at 5 n.2. Judge Heckman further explained that Defendant's effort to limit the pool of arbitrator to 7 Alabama-licensed attorneys "creates a particularly one-sided (because Alabama has no wage code) and small pool which impairs Claimants' rights to make a meaningful selection of merits arbitrators." Dfd.'s Ex. F (ECF 14-6) at 8 (citing *Hooters v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (striking as unconscionable arbitration selection methods that allow one party to limit the selection of arbitrators to such a degree that the claimant has no effective choice); *McMullen v. Meijer*, 355 F.3d 485, 488, 492-94 (6th Cir. 2004) (plan that used the same pool of 5-7 arbitrators for all Michigan arbitrations was found unenforceable). Again, Defendant improperly attacks the merits of arbitration decisions and a procedural ruling not subject to judicial review.

**D.      Judge Green's Final Award In *Sarwi v. PJ Cheese* Considered Defendant's Arguments About Awarding A Refund Of Tax Withholdings**

Defendant misinforms the Court that the decision of Judge Melvia Green (Ret.) in *Sarwi v. PJ Cheese, Inc.*, AAA Case No. 01-22-0002-1162 (Green Mar. 6, 2023), followed by Judge Mary Barzee Flores in Ms. Sapp's arbitration, contained "no mention … of the propriety of awarding a refund of tax withholdings." ECF 14 at 5 n.3. That is because (a) Judge Green recognized that the actual issue was whether Mr. Sarwi is entitled to the "reimbursements" he sought under the FLSA, the Florida Constitution and the FMWA, as opposed to (b) whether Mr. Green sought, or was entitled to, recover tax withholdings. Simply stated, Judge Green was not misled by Defendant's argument that Mr. Sarwi sought a tax refund. Like Mr. Sarwi, Ms. Sapp, pursued "reimbursements" from PJ Cheese, not a tax refund. Also, as in *Sarwi*, the Court should not be misled by Defendant's same incorrect argument that Ms. Sapp seeks a tax refund.

**III.      CONCLUSION**

For all reasons stated the Court should confirm the Final Award and schedule fee and cost briefing.

10

July 28, 2026

Respectfully submitted,

ARCADIER, BIGGIE, AND WOOD, PLLC.

*/s/ Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire
Florida Bar No.: 0093839
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Primary Email: office@ABWlegal.com
Secondary Email: wood@ABWlegal.com
Phone: (321) 953-5998
Fax: (321) 953-6075
LEAD Counsel for Petitioner Jonice Sapp

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing, along with the exhibits thereto, were served on Respondent's attorneys of record via the Court's electronic case filing system on this 28th day of July, 2026.

*/s/ Joseph C. Wood, Esquire*